**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ————————————————————— x | |
| Steven Lavalle, individually on : | |
| behalf of himself and all others similarly : | |
| situated, : | Case No. |
| : | |
| Plaintiff, : | |
| v. : | |
| : | |
| : | **CLASS ACTION COMPLAINT** |
| Neutrogena Corporation and Johnson & Johnson : | |
| Consumer Companies, Inc., : | **JURY TRIAL DEMANDED** |
| : | |
| Defendants. : | |
| : | |
| ————————————————————— x | |

Plaintiff Steven Lavalle (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.     This action seeks to remedy the deceptive and misleading business practices of Neutrogena Corporation, and, its parent company, Johnson & Johnson Consumer Companies, Inc., (hereinafter collectively "Defendants") with respect to the marketing and sale of various sunscreen products throughout the state of New York and throughout the country, including, but not limited to, the following products (hereinafter collectively the "Products"):

- Neutrogena Beach Defense Oil-Free Body Sunscreen Spray – SPF 30;

- Neutrogena Beach Defense Oil-Free Body Sunscreen Spray – SPF 50;

- Neutrogena Beach Defense Oil-Free Body Sunscreen Spray – SPF 70;

- Neutrogena Beach Defense Oil-Free Body Sunscreen Spray – SPF 100;

- Neutrogena Beach Defense Water + Sun Protect – SPF 30;

- Neutrogena Beach Defense Water + Sun Protect – SPF 50;

1

- Neutrogena Beach Defense Water + Sun Protect – SPF 60;

- Neutrogena Beach Defense Water + Sun Protect – SPF 70;

- Neutrogena Cool Dry Sport Water-Resistant Sunscreen Spray – SPF 30;

- Neutrogena Cool Dry Sport Water-Resistant Sunscreen Spray – SPF 50;

- Neutrogena Cool Dry Sport Water-Resistant Sunscreen Spray – SPF 70;

- Neutrogena Cool Dry Sport Water-Resistant Sunscreen Spray – SPF 100;

- Neutrogena Invisible Daily Defense Sunscreen – SPF 50;

- Neutrogena Invisible Daily Defense Sunscreen – SPF 60;

- Neutrogena Ultra Sheer Sunscreen Spray – SPF 30;

- Neutrogena Ultra Sheer Sunscreen Spray – SPF 45;

- Neutrogena Ultra Sheer Sunscreen Spray – SPF 70;

- Neutrogena Ultra Sheer Sunscreen Spray – SPF 100;

- Neutrogena Sheer Zinc Dry-Touch Face Sunscreen Lotion – SPF 50;

- Aveeno Protect + Refresh Sunscreen – SPF 60; and

- Aveeno Baby Continuous Protection Sensitive Sunscreen Lotion, Broad Spectrum – SPF 50.

2.     Defendants do specifically list both the active and inactive ingredients of these Products but fail to disclose that the product contains "benzene."

3.     Benzene is a widely recognized and incredibly dangerous substance, especially in the context of applying it to the skin.

4.     Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[1]

---

[1] https://pubmed.ncbi.nlm.nih.gov/17718179/

5.      For example, Benzene is known to harm the bone marrow and long exposure can lead to blood cancer, such as leukemia.[2]

6.      Consumers like the Plaintiff trust manufacturers such as Defendants to sell Products that are safe and free from harmful known toxins, including benzene.

7.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the sunscreen they purchase will comply with its labeling and not contain any knowingly harmful substances like benzene.

8.      Defendants' specifically manufacture, sell, and distribute the Products in this manner using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers.

9.      For example, Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and labels themselves.  The packaging and labels are designed to appeal to health-conscious consumers, which include representations such as "#1 Dermatologist Recommended Brand."

10.     Plaintiffs also expect the ingredient listing to actually disclose the ingredients within the Products.

11.     However, Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products contain benzene, which Defendant does not list or mention anywhere on the Products' packaging or labeling.

12.     Plaintiff and Class Members relied on Defendants' misrepresentations and omissions of what is in the Products when they purchased them.

---

[2] https://emergency.cdc.gov/agent/benzene/basics/facts.asp

13.     Plaintiff and Class Members paid a premium for the Products based upon the specific ingredient representations and the health-conscious marketing campaigns of the Products.

14.     Given that Plaintiff and Class Members paid a premium for the Products based on Defendants' misrepresentations that they are healthy and did not contain a dangerous substance like benzene, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

15.     Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendants also breached and continue to breach their warranties regarding the Products.  In addition, Defendants have been and continue to be unjustly enriched.

16.     Accordingly, Plaintiff brings this action against Defendants on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

**FACTUAL BACKGROUND**

17.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in products that they and their family members put on and/or into their bodies. Companies such as Defendants have capitalized on consumers' desire for healthy and safe products, and indeed consumers are willing to pay, and have paid, a premium for these products.

18.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as benzene, especially at the point of sale, and therefore must and do rely on Defendants to truthfully and honestly report what the Products contain on the Products' packaging or labels.

19.     When consumers look at the Products' packaging there is no mention of benzene.  Benzene is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Products.   Rather, Defendants' packaging is designed to appeal to health-conscious consumers with the representation "#1 Dermatologist Recommended Brand."  This leads reasonable consumers to believe the Products are safe and do not contain dangerous chemicals like benzene.

20.     However, despite this, the Products contain benzene.

21.     21st century research has confirmed that there is no safe level of benzene exposure.[3]

22.     Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[4]

23.     The National Toxicology Program (hereinafter "NTP") has regarded benzene as "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[5]  Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer (hereinafter "IARC").

24.     According to the Center for Disease Control ("CDC"), benzene can cause severe health issues such as anemia, immune system damage, and cancer.[6]

25.     Direct benzene exposure through the skin is particularly concerning.  For example, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[7]

---

[3] https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646
[4] https://pubmed.ncbi.nlm.nih.gov/17718179/
[5] https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf
[6] https://emergency.cdc.gov/agent/benzene/basics/facts.asp
[7] *Id.*

26.     Research also has revealed that sunscreen ingredients can be absorbed into the bloodstream.[8]

27.     Moreover, a study by Health Canada's Bureau of Chemical Hazards concluded that the application of sunscreen specifically increases the absorption rate of benzene through the skin, thereby increasing the risk of harm.[9]

28.     Even low levels of benzene are particularly dangerous in a sunscreen product because "[s]unscreen products are typically used in many times higher volume than standard drug products like tablets or capsules, so even a relatively low concentration limit can result in very high total [benzene] exposure."[10]

29.     Experts in the field of dermatology agree with this assessment.  For example, Christopher Bunick, a professor of dermatology at Yale University has stated:

> Considering that human skin has a large total surface area (~1.85 m2), and that ~28.5 g of sunscreen is needed per application to properly cover that skin surface, it follows then that there is not a safe level of benzene that can exist in sunscreen products. The total mass of sunscreen required to cover and protect the human body, in single daily application or repeated applications daily, means that even benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene.[11]

30.     This is why recent research revealing benzene in Defendants' Products is particularly concerning.

31.     Valisure LLC recently published a study ("Study") that found that benzene has been found in many sunscreens.[12]

---

[8] https://abcnews.go.com/Health/sunscreen-absorbed-bloodstream-testing-needed/story?id=68442221
[9] https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/
[10] Valisure, Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care products, May 24, 2021, https://www.valisure.com/blog/valisure-news/valisuredetects-benzene-in-sunscreen/, at 16.
[11] *Id.* at 17.
[12] https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/

32.     In addition to Plaintiff's own research, Valisure also found that Defendants' Products contained the highest benzene levels out of the 272 sunscreen and after-sun products tested.[13]

33.     The concerning part is that benzene exposure in the manufacturing process can be specifically avoided so that the Products could have absolutely no benzene in them.[14]

34.     Therefore, Defendants' false, misleading, omissions, and deceptive misrepresentations regarding the ingredients of the Products are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

35.     Defendants' concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed.  Defendants know that if it had not omitted that the Products contained benzene, then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all) and Defendants wanted to increase sales/profits.

## JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, Defendant Neutrogena Corporation is a citizen of California,

---

[13] *Id.*
[14] Valisure, Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care products, May 24, 2021, https://www.valisure.com/blog/valisure-news/valisuredetects-benzene-in-sunscreen/, at 2.

and Defendant Johnson & Johnson Consumer Companies, Inc. is a citizen of New Jersey; and (3)

the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

37.    This Court has personal jurisdiction over Defendants because Defendants conduct

and transact business in the state of New York, contract to supply goods within the state of New

York, and supply goods within the state of New York.

38.    Venue is proper because Plaintiff and many Class Members reside in the Southern

District of New York, and throughout the state of New York.  A substantial part of the events or

omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiff**

39.    Plaintiff Steven Lavalle is a citizen and resident of the state of New York.  During

the applicable statute of limitations period, Plaintiff purchased Defendants' Products that

contained benzene, including, but not limited to, the Cool Dry Sport Aerosol Sunscreen, which

was part of a nationwide recall by Defendants for containing benzene.

40.    Had Defendants not made the false, misleading, and deceptive representations and

omissions regarding the Products containing benzene, Plaintiff would not have been willing to pay

the same amount for the Products, or would not have been willing to purchase the Products.

Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had

he known the truth about the Products.  The Products Plaintiff received were worth less than the

Products for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendants'

improper conduct.

**Defendants**

41.     Defendant, Neutrogena Corporation (hereinafter "Neutrogena Corp."), is a Delaware corporation with its headquarters in California.  Neutrogena Corp. is authorized to do business in New York.  Neutrogena Corp. is a subsidiary of the Johnson & Johnson Consumer Companies, Inc. conglomerate.  As one of the world's leading brands of skin care, hair care, and cosmetics, Neutrogena Corp. distributes its products, including the Products, throughout the United States.  Neutrogena Corp.'s line of sunscreen products, including the sunscreen purchased by Plaintiff and Class Members, are available at retail stores throughout New York and the United States.

42.     Defendant, Johnson & Johnson Consumer Companies, Inc., (hereinafter "Johnson & Johnson") is a New Jersey corporation that is also headquartered in New Jersey.  Johnson & Johnson, the manufacturer and/or distributor of the Products, is the parent company of Neutrogena Corp. and also owns manufactures, markets, advertises, and distributes Aveeno Protect + Refresh Sunscreen – SPF 60 and Aveeno Baby Continuous Protection Sensitive Sunscreen Lotion, Broad Spectrum – SPF 50.

43.     Defendants' manufacture, market, advertise, and distribute the Products throughout the United States.  Defendants created and/or authorized the false, misleading, omitting, and deceptive advertisements, packaging, and labeling of their Products.

## CLASS ALLEGATIONS

44.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct.

Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

45.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

46.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

47.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

48.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

49.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

50.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

        a.   Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.  Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c.  Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of their Products;

d.  Whether Defendants' false and misleading statements and omissions concerning their Products were likely to deceive the public; and

e.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

51.  <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

52.  <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

53.  <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

54.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.      The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.      When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendants' uniform false advertising to purchase their Products.

55.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

56.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.   Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in the Products.   Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.   Plaintiff would purchase the Products again if they did not include benzene.

57.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.     <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.   Defendants' Products have been purchased by thousands of people throughout the United States.

b.     <u>Commonality</u>: Questions of law and fact are common to members of the Class.   Defendants' misconduct was uniformly directed at all consumers.   Thus, all members of the Class have a common cause against Defendants to stop their misleading conduct through an injunction.   Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.   Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

i. Resolution of the issues presented in the 23(b)(3) class;

ii. Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

iii. Whether, on equitable grounds, Defendants should be prevented from continuing to deceptively mislabel the Products?

c.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because his claims arise from the same course of conduct (i.e. Defendants' deceptive, omitting, and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the

injunctive Class, he purchased Defendants' Products which were sold unfairly and deceptively to consumers throughout the United States.

d.      Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

e.      Superiority: An injunctive class is superior to individual relief because it will allow for resolution while avoiding the unnecessary duplication of efforts and expense that numerous individual actions engender.

58.     Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class and Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed their Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing their misleading and deceptive marketing practices and would be required to honestly disclose to consumers the true nature of the contents of the Products.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

59.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

61.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York

Subclass Members seek monetary damages against Defendants, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

62. There is no adequate remedy at law.

63. Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

64. Defendants' improper consumer-oriented conduct—including failing to disclose that the Products have benzene—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have. Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

65. Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were mislabeled and unhealthy. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

66. Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products and to pay a premium price for them.

67. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

68. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory,

treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

69.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

72.     Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning Defendants' Products inasmuch as it misrepresents that the Products are safe for use and don't list the Products contain benzene.

73.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were mislabeled and not healthy.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

74. Defendants' advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

75. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77. Defendants made the material misrepresentations described in this Complaint in Defendants' advertising and on the Products' packaging and labeling.

78. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

79. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

80. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81. Defendants provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain benzene.

82.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

83.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

84.     Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

85.     Defendants knowingly breached the express warranties by including benzene in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

86.     Within a reasonable time after it knew or should have known, Defendants did not change the Products' labels to include benzene in the ingredient list.

87.     Defendants thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.    N.D. Cent. Code § 41-02-30;

ii.    Il. O.R.C. Ann. § 1302.26;

jj.    12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.    13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

88.    As a direct and proximate result of Defendants' breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiff and All Class Members)

89.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

90.     Defendant sold and Plaintiff and Class Members purchased the Products.

91.     When sold by Defendants, the Products were not merchantable, did not pass without objection in the trade under the label description, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on its container or label.

92.     Because the products contain benzene, they in no way were safe for use as sunscreen products.

93.     As a direct result of Defendants' products being unfit for its intended purpose and/or otherwise not merchantable, Plaintiff and Class members were damaged because they would not have purchased (or paid a premium for) Defendant's Product had they known the true facts regarding the benzene content.

## FIFTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff and All Class Members)

94.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95.     Defendants concealed and failed to disclose on the Products' packaging and labeling that the material fact the Products contained benzene, and that the Products were not safe or healthy for use.

96.     Defendants had knowledge that the Products contained benzene, and that the Products were not safe or healthy for use.

97.     Defendants have a duty to disclose that the Products contained benzene, and that the Products were not safe or healthy for use.

98.     Defendants had superior knowledge or means of knowledge available to them and knew that Plaintiff and Class Members would rely upon the representations and omissions of Defendants regarding the quality and ingredients of their Products.   Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains benzene, especially at the point of sale.

99.     Defendants' concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy.  Defendants know that if it had not omitted that the Products contained benzene, then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all) and Defendants wanted to increase sales/profits.

100.    Defendants' concealment misled Plaintiff and the Class as to the true nature of what they were buying and putting onto and into their bodies.

101.    Defendants fraudulently concealed that the Products contained benzene and that the Products were not safe or healthy for use.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

102.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.     Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

104.     Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling the Products while misrepresenting and omitting material facts.

105.     Defendants' unlawful conduct, as described in this Complaint, allowed Defendants to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendants' benefit and enrichment.  Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

106.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

107.     It is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

108.     Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a)  Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)  Entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct their practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c)  Awarding monetary damages and treble damages;

(d)  Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e)  Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f)  Awarding punitive damages;

(g)  Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h)  Granting such other and further relief as the Court may deem just and proper.

Dated: July 15, 2021

       **THE SULTZER LAW GROUP P.C.**

       By:     Jason P. Sultzer /s/

       _____
       Jason P. Sultzer, Esq.
       Joseph Lipari, Esq.
       Daniel Markowitz, Esq.
       270 Madison Avenue, Suite 1800
       New York, NY 10016
       Tel: (845) 483-7100
       Fax: (888) 749-7747
       sultzerj@thesultzerlawgroup.com
       liparij@thesultzerlawgroup.com
       markowitzd@thesultzerlawgroup.com

David C. Magagna Jr., Esq.
Charles E. Schaffer, Esq.
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

*Counsel for Plaintiff and the Class*